UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Yolanda Cendejas,<br><br>         Plaintiff(s),<br><br>   v.<br><br>Federal Insurance Company, Inc., *a New Jersey Corporation doing business as* The Chubb Group of Insurance Companies,<br><br>         Defendant(s).<br>_____/ | No. C 04-4018 TEH (WDB)<br><br>ORDER RE DEFENDANT'S MOTION TO COMPEL PSYCHIATRIC AND PSYCHOLOGICAL EXAMINATIONS OF PLAINTIFF |

Having considered the parties' substantial submissions, the Court hereby GRANTS IN PART and DENIES IN PART Chubb's motion to compel plaintiff to submit to psychiatric and psychological examinations conducted by forensic professionals retained by defendant.

Dr. Levy and Dr. Roberts effectively take the court to task for appearing to impose limits, in advance, on the range of diagnostic conclusions or hypotheses that would be accessible to examiners.  Among the claims that defendant may fairly challenge in this case are the plaintiff's contentions that she suffered from OCD and from "Severe Depression" (or, perhaps more conventionally, some version of the affective disorder currently characterized, generally, as "Major Depression").  Defendant may take the position, and present evidence to support that position, that plaintiff in fact suffered from neither "disorder" – that she suffered from some other disorder or from no disorder at all.

The court also has no business assuming that Ms. Cendejas' symptoms have in fact subsided, or that she does not continue to suffer in some degree from some kind of continuing disorder or condition that could be relevant to the causation or damages issues in this case, simply because she and/or her clinician now take such positions.

In addition, defendant's experts appropriately question the basis for the court's unexamined assumption that testing that explores exaggeration (or understatement) could not shed light on the causes or severity of the mental or emotional conditions that plaintiff suffered, or claims to have suffered, and that she alleges were caused or exacerbated by defendant's conduct. What the court intended to place off-limits was 'expert' testimony about whether, during the trial or during her deposition, plaintiff was telling the truth or lying. This limitation is not rooted in some half-baked assessment of the pertinent 'science,' but in the 7th Amendment and in policy-based determinations, by the judicial and legislative branches, that it would not be appropriate to permit parties to use experts to challenge the veracity or accuracy of testimony in every judicial proceeding in which the outcome might be affected by how tensions between unaligned versions of events are resolved.

The issue that remains is whether defendant has made a showing sufficient to justify the examinations proposed by Dr. Levy and Dr. Roberts. Despite being instructed clearly by the court to do so, Dr. Levy has failed to describe, with anything approaching particularity, the nature of the line of inquiry or the questions he proposes using. Nor has he persuaded the court that the presumptively unstructured interview that he proposes conducting is likely to add significantly to the understanding of possible long-term disorders or conditions that Dr. Roberts says his tests will help detect and assess. These shortcomings in Dr. Levy's declarations require the court to find that defendant has failed to make the showing necessary to justify an examination by Dr. Levy.

Dr. Roberts' declaration identifies three specific and widely used tests. He also describes, with some particularity, how these tests could help determine whether Ms. Cendejas has some long term disorder or condition that could have caused or contributed

to the reactions (or events) she reports (or does not report).  Dr. Roberts' submissions are sufficient to justify administering the three tests he has identified.

In administering and interpreting these three tests, Dr. Roberts may well venture into matters of "validity" and/or of exaggeration or understatement.  As he points out, "validity" in this setting is a concept that describes the relationship between one individual's responses and the responses of many, many other people.  How much accurate diagnostic mileage a professional can get out of that comparison in this particular case is a matter we would expect the parties' experts to debate.  In the course of their dialogue, the court would hope that someone would inquire into the basis for the assertion that the responses of an analytically significant percentage of the persons whose answers inform the "large database" used as a baseline in these matters "have independently been deemed to be valid."

For the reasons set forth above, Dr. Roberts may administer and interpret (if 'valid') the three tests he describes in his most recent declaration.  In doing so, he will comply with the conditions set forth in sections (a) and (b) of paragraph "4." of the Court's Order of October 13, 2005.  The conditions imposed in sections (c) and (d) of that paragraph are hereby withdrawn.

IT IS SO ORDERED.

Dated: November 8, 2005

_____
WAYNE D. BRAZIL
United States Magistrate Judge

cc: parties, WDB, TEH, stats